IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**ROBERT EDGAR ENGLISH,**<br><br>Defendant. | Criminal No. 2:23-cr-19 |

### POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Anthony Mozzi, Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing. In the Presentence Investigation Report ("PSR") prepared in this matter, the United States Probation Office determined the applicable advisory guidelines range to be a term of 151 to 188 months imprisonment, based on a Total Offense Level of 29 and a Criminal History Category of VI. *See* ECF No. 48 ¶ 129-130 (hereinafter "PSR"). The United States does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation. For guidelines purposes, the defendant has objected to three enhancements, for which he asserts there is insufficient evidence, as well as the denial of the two-point reduction in offense level for acceptance of responsibility pursuant to section 3E1.1 of the U.S. Sentencing Guidelines ("USSG" or the "Guidelines"). Based on the nature and circumstances of the offense, the defendant's history and characteristics, and all of the other sentencing factors listed in 18 U.S.C. § 3553(a), the United States advocates for a term of imprisonment of 156 months, which is within the guidelines range, followed by a five-year term of supervised release.

I. **Standards Governing Sentencing**

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the Guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the Guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at 50); *see also Nelson v. United States*, 555 U.S. 350, 351-52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. In the event that the district court imposes a sentence outside the Guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

II. **Defendant's Objections To The Guidelines Calculations**

Defendant has four objections to the PSR, three of which assert that there is insufficient evidence to support various enhancements and the last of which arises out of the PSR's denial of the two-point reduction for acceptance of responsibility pursuant to USSG section 3E1.1.

A. **Insufficient Evidence Objections**

First, defendant claims that there is insufficient evidence to support the two-level

enhancement for obstruction of justice pursuant to USSG section 3C1.1 *See* PSR at 34. But the PSR excerpts language from multiple letters sent by defendant during his pretrial detention—which were later uncovered by law enforcement and disclosed to the defense—in which defendant offers to pay witnesses bother before and after trial for testifying and advises, among other things, that he had "sent everyone scripts." PSR ¶ 6.

Defendant similarly objects to the four-level enhancement pursuant to section 2k2.1(b)(6)(B) and asserts that there is insufficient evidence to show that a weapon involved in this offense was tied to another felony. See PSR ¶ 9 (discussing shooting). To address this objection, the United States is prepared to call Special Agent Daniel Beasley, of the Bureau of Alcohol, Tobacco, Firearms and Explosives, at defendant's sentencing. Specifically, the United States expects SA Beasley to testify that casings from the scene of the shooting were forensically matched to the Glock 9mm semiautomatic pistol which was straw purchased for defendant at the same time as the AR-type pistol for which defendant has pleaded guilty to possessing. *See* PSR ¶ 10 (discussing straw purchase of both weapons on May 28, 2019, mere days before the June 14, 2019 shooting). The United States also notes that a Glock handgun was displayed during the December 7, 2019 assault of defendant's ex-girlfriend.

Defendant further objects to the six-level enhancement under section 2A6.1(b)(1) because he claims that there is insufficient evidence that the offense involved conduct evidencing an intent to carry out such threat. PSR at 34. The PSR, however, reflects multiple instances in which defendant did, in fact, assault the woman to whom he addressed the violent threats, and this Court can properly consider acts that occurred prior to, as well as after, the offense. *See* § 2A6.1 cmt. 1 ("the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense; however, conduct that occurred prior to the offense

must be substantially and directly connected to the offense, under the facts of the case taken as a whole").

      **B.**      **Acceptance of Responsibility**

Finally, defendant objects that the PSR does not grant him a reduction for acceptance of responsibility. Section 3E1.1(a) provides for a two-level decrease in offense level "if the defendant clearly demonstrates acceptance of responsibility for his offense." However, that two-level reduction is typically not available when the defendant has received an enhancement for obstruction of justice under § 3C1.1. *See* § 3E1.1. cmt. 4. Because the defendant in this case obstructed justice by sending letters to potential witnesses while he was in pre-trial detention, *see* PSR ¶ 6, he therefore has the burden of showing that there are "extraordinary" circumstances justifying a reduction in this case if he wishes to still receive the two-point reduction. *Harris*, 890 F.3d at 488 (citing United States v. Hudson, 272 F.3d 260, 264 (4th Cir. 2001)). In order to establish "extraordinary" circumstances, defendant "must show that he has done something atypical or beyond the ordinary course either to take responsibility or to minimize the effects of his own obstruction to merit the reduction." *Id.*

Whether or not a defendant has proved "extraordinary" circumstances is left to the discretion of the sentencing court, which must weigh the facts on a case-by-case basis. "To determine whether a defendant has accepted responsibility, the sentencing judge must weigh the totality of the circumstances." *United States v. Harris*, 890 F.3d 480, 488 (4th Cir. 2018); *see also United States v. Knight*, 606 F.3d 171, 176 (4th Cir. 2010) (noting that the Fourth Circuit's case law "generally treats the question of whether a defendant who obstructed justice is entitled to an acceptance-of-responsibility reduction as a largely factual matter to be determined by the district court").

4

The United States is prepared to recount the specific history of the plea negotiations in this matter to the Court at the sentencing hearing. Given the case-specific approach endorsed by the Fourth Circuit, the United States did not object to Probation's conclusion in the PSR that defendant should not receive the two-point reduction. Absent a demonstration of extraordinary circumstances by the defendant, the two-point reduction for acceptance of responsibility should be denied. In the event, however, that the Court finds the defendant has satisfied this high burden and grants the two-point reduction for acceptance of responsibility, the United States would move the Court to reduce the offense conduct level by an additional third point, as the defendant's guilty plea allowed the United States to allocate resources to other cases and investigations.

### III. The Court Should Impose a Sentence of 156 Months of Imprisonment

Under 18 U.S.C. § 3553(a), the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in the statute. Those purposes are "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). In determining the appropriate sentence, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant," *id*. § 3553(a)(1), "the kinds of sentences available," *id*. § 3553(a)(3), the Guidelines and the Guideline range, *id*. § 3553(a)(4), the Guidelines' policy statements, *id*. § 3553(a)(5), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id*. §

3553(a)(6), and "the need to provide restitution to any victims of the offense," *id*. § 3553(a)(7).

As set forth below, the application of the above-referenced statutory factors supports a custodial sentence of a term of imprisonment within the advisory Guidelines range. Given the serious nature of the offense, as well as defendant's substantial criminal history, such a sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

A.   **Nature and Circumstances of the Offense**

The nature of the charged offense based only upon the agreed upon statement of facts is undoubtedly serious. With respect to the first count of conviction, defendant knew that he was prohibited from legally possessing firearms due to his substantial criminal record, which includes a conviction in New York for attempted criminal possession of a firearm. *See* PSR ¶ 7 at subparagraph 4. Defendant, however, disregarded the law and in early 2019 paid a second individual to straw purchase an AR-style handgun for him at a local firearm retailer. PSR ¶ 7 at subparagraph 1. And, when law enforcement seized the weapon from him later that year, it was attached to a large drum magazine that could store up to sixty (60) rounds of ammunition. PSR ¶ 7 at subparagraph 2.

With respect to the second count of conviction, defendant repeatedly sent threatening messages to a former romantic partner using a Facebook account in the fall of 2021. Among other things, defendant threatened that the victim "better be looking for the reaper" and that he would "black out your whole family." PSR ¶ 7 at subparagraph 5. Defendant also attempted to obscure his control of the Facebook account by registering it to a business entity he had created the month prior. *See* PSR ¶ 7 at subparagraph 6.

The relevant conduct detailed within the PSR, however, tells an even more troubling story.

6

Indeed, defendant did much more than just make threating statements, he repeatedly assaulted and targeted his ex-girlfriend. He threatened and broke down the door to her apartment on November 17, 2019. PSR ¶ 12. On December 7, 2019, he assaulted her in front of her seven-year-old daughter, displaying a Glock handgun before breaking his ex-girlfriend's nose and leaving her on the ground before fleeing in his vehicle. PSR ¶ 13. And defendant used the same straw purchaser to obtain a Glock 9mm semiautomatic pistol which was later forensically matched to a shooting in Portsmouth involving his ex-girlfriend. *See* PSR ¶ 9-10.

In short, defendant's conduct in this case was not a mistake or one-time oversight. Defendant chose to ignore that he was prohibited from possessing firearms and not only repeatedly threatened his former romantic partner but also perpetrated shocking violence against her, even in the presence of children. The seriousness of the offense therefore weighs heavily in favor of a significant sentence of incarceration.

### B.     History and Characteristics of the Defendant

The Court must consider "the history and characteristics of the defendant[s]" in imposing sentence, 18 U.S.C. § 3553(a)(1), which in this case do not weigh against the imposition of a within-Guidelines sentence.

Defendant is in his early forties and appears to be in good health aside from asthma, which appears to be well-controlled, and high-blood pressure, for which he is taking daily medication. PSR ¶ 105. He also reports some mental health diagnoses and appears to have, from time to time, used alcohol and marijuana to "self-medicate." PSR ¶ 108. Defendant's parents separated when he was approximately eight years-old and he had no contact with his father until several years later. PSR ¶ 93. During his childhood, he reports that both his mother and brother physically abused him, hitting him with belts, hangers, and tree branches, and defendant claims that his mother

7

verbally abuses him to this day. PSR ¶ 94. His mother, who was interview by U.S. Probation, denies any abuse and said that she did her best to provide defendant with a stable environment. PSR ¶ 94.

Defendant also has a substantial criminal record, *see* PSR ¶¶ 50-69, including convictions for, among others, drug possession, multiple assaults including domestic violence, contempt of court, as well as the previously mentioned conviction for possession of a firearm in New York.

Defendant is separated from his first wife, and has no contact with her, but reports that he is in contact with their adult child, who currently who lives in Florida. PSR ¶ 99. He also has a young son, with whom he has no contact, from another relationship, *see* PSR ¶ 100, and a pre-school aged daughter with N.M., the former romantic partner who is the victim in this case, *see* PSR ¶ 101. Defendant appears to have no significant prior employment other than a self-reported eight-month job as a dishwasher at a restaurant in Norfolk, which U.S. Probation has not yet been able to verify. *See* PSR ¶¶ 114, 118-123. He also apparently served in the National Guard for two years before he was discharged after being convicted of a domestic violence offense. PSR ¶ 116.

### C.   Other Factors

A sentence of imprisonment, followed by a substantial term of supervised release, will serve the important and related sentencing goals of deterrence and protection of the public. The requested sentence will generally deter others and specifically deter this defendant from committing similar crimes in the future by demonstrating that the Court takes such offenses seriously and punishes such offenses with a substantial term of imprisonment. A sentence within the advisory Guidelines range would also avoid unwarranted sentencing disparities. The Guidelines "represent[s] the collective determination of three governmental bodies—Congress,

the Judiciary, and the Sentencing Commission—as to the appropriate punishments for a wide range of criminal conduct." Indeed, "the advisory Guidelines range addresses the statutory purpose of combatting disparity . . . [s]o when a district court imposes a within-Guidelines or below-Guidelines sentence, such disparities are ordinarily accounted for." *United States v. Sanderson*, No. 21-5900, 2022 U.S. App. LEXIS 10499, at *18 (6th Cir. Apr. 18, 2022).

### IV. Conclusion

The defendant repeatedly frustrated federal safeguards imposed on the ownership of firearms and has repeatedly assaulted and threatened the mother of his child. He now stands at a crossroads. To the defendant's credit, he has acknowledged his crimes and pleaded guilty. But the serious nature of these offenses, as well as the fact that defendant's prior sentences have not sufficiently deterred him from committing further crimes, support a significant sentence of incarceration. For all of the foregoing reasons, the United States respectfully that the Court impose a sentence of imprisonment of 156 months followed by a term of supervised release of 5 years. Such a sentence is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

    Respectfully submitted,

    Jessica D. Aber
    United States Attorney

By:    /s/
    Anthony Mozzi
    Assistant United States Attorneys
    United States Attorney's Office
    101 West Main Street, Suite 8000
    Norfolk, VA 23510-1671
    Phone: (757) 441-6331
    Fax:   (757) 441-6689
    Email: anthony.mozzi@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 28, 2024, I electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

      I further certify that on February 28, 2024, I will send an electronic copy of the foregoing to the following:

Nicole Pender  
United States Probation Officer  
600 Granby Street, Suite 200  
Norfolk, Virginia 23510

By:    /s/_____  
Anthony Mozzi  
Assistant U.S. Attorney  
United States Attorney's Office  
101 West Main Street, Suite 8000  
Norfolk, VA 23510-1671  
Phone: (757) 441-6331  
Fax:   (757) 441-6689  
Email: anthony.mozzi@usdoj.gov